# THE REGENT.

## LATVIJAS KUGNIECIBAS SABIEDRIBA v. THE REGENT et al.

### No. 16052.

District Court, E. D. New York.
Nov. 6, 1942.

David Drucker, of New York City, for libellant.

Robert H. Law, Jr., of New York City, for petitioner.

GALSTON, District Judge.

This possessory libel was tried and a decision rendered on November 22, 1940 (35 F.Supp. 985), providing for the dismissal of the libel because of the failure of proof in respect to the title of the libellant. No decree was presented because the parties stipulated for the operation of the vessel and for the taking of depositions of the libellant and its officers and directors. Accordingly on January 15, 1941, this court, on such stipulation, made an order providing for the reopening of the trial to enable the libellant to take such depositions and for the appointment of Joseph G. Kearns and Charles Recht as joint trustees to operate the vessel, and of Daniel F. Young, Inc., as operating agent of the trustees, all such persons having been chosen by the parties hereto.

On August 8, 1942, a petition was filed on behalf of Alfred Bilmanis, as Minister Plenipotentiary, Envoy Extraordinary, and Consul General of Latvia in the United States, by his attorney, which petition recites that it was made under the authority of the treaty between the United States and the Republic of Latvia; that the Regent was owned by one Janis Freimanis, a Latvian national, and resident of Riga, Latvia; that on or about June 17, 1940, the Union of Soviet Socialist Republics seized the Republic of Latvia, and that since said date the people thereof have not had a free choice in the making of decisions respecting their property; that on June 22, 1941, the armed forces of the German Reich entered the Republic of Latvia and by force of arms expelled the semblance of government which had wrongfully been set up in the Republic of Latvia by the Union of Soviet Socialist Republics. It is further recited that at the present time the Republic of Latvia and its people are free from the mandates and duress of the Union of Soviet Socialist Republics, but are coerced under the duress of the armed forces and officials of the German Reich; that Latvia is recognized by the United States of America as an existing, independent, political entity; that the United States does not recognize the Soviet invasion and forceful annexation of Latvia, and did not sanction the attempt to include it in the Union of Soviet Socialist Republics, and that the United States Government still does not recognize the absorption of Latvia nor the legality of the so-called naturalization acts or decrees affecting property in the Republic of Latvia.

The petition alleges that the trustees now have in their possession large sums of money consisting of freight earned by the vessel and of insurance monies collected following the torpedoing of the vessel; that the alleged owner, Janis Freimanis, died on August 18, 1941; and that the Public Administrator of New York County has been appointed administrator of the estate of Janis Freimanis.

Accordingly the petitioner seeks to intervene for the purpose of having the possessory libel dismissed and having the trusteeship of Charles Recht and Joseph G. Kearns terminate and having Daniel F. Young, Inc., and the trustees directed to account to the court and to pay over to the Public Administrator of the County of New York all funds remaining in their possession.

The answering affidavits of Drucker and Recht to the petition disclose that during the negotiations which extended from November, 1940, at or about the time when the court's decision was rendered, to January 14, 1941, when the trust agreement was entered into, they were advised by the then attorney for the claimant that Kearns had been in consultation with the petitioner, Bilmanis, who had, prior to the filing of the possessory libel herein, appointed Daniel F. Young, Inc. operating trustee of the Steamship Regent. Moreover, the attorney representing the petitioner when the order of January 15, 1941, was presented to the court was fully aware of the agreement between the parties and the terms of the proposed order, and was before the court at the time. So that at all times since the end of November, 1940, it must be as-

sumed that the petitioner was fully informed concerning the trusteeship and the operation of the vessel by Daniel F. Young, Inc. The inference is inescapable that if the petitioner at the conference held on January 15, 1941, was opposed to the proposed order based on the stipulation of January 14, 1941, he would have sought to intervene before August, 1942. During that time, at least up to the time when the vessel was sunk, the trustees have operated the vessel for the account of those ultimately to be determined to be the owners. The answering affidavit also alleges that in a "public administrator" proceeding before the Surrogate's Court, Robert H. Law, Jr., the attorney now appearing for the petitioner, filed a cable showing that Freimanis was not a Latvian citizen, but a naturalized German citizen. Curiously enough also it appears that the answer to the libel filed by Young, Inc., contained the following allegation:

"That heretofore the duly accredited Minister of Latvia[1] to the United States, and the duly accredited Latvian Consul in New York City, have duly appointed the firm Daniel F. Young, Inc. as trustee of said vessel and the proper recipient of all monies due or to become due to said owner from the operation of said vessel or otherwise."

The Recht affidavit opposing this petition further recites that formal documents so appointing Daniel F. Young, Inc., were executed on August 6, 1940, and August 10, 1940. It further appears from the Recht affidavit that the present attorney for Daniel F. Young, Inc., in a proceeding before Judge Knox in the Southern District of New York, held on November 28, 1941, affecting other Latvian steamships, stated that Young, Inc., had at all times kept the petitioner advised "of everything * * * the charters we make, the position of the ships, and everything."

Following the argument on the present motion a hearing was held on October 9, 1942, to permit the petitioner to offer proof concerning his good faith in making "what the affiants believe to be a belated application", and also to prove the Latvian nationality of the alleged owner. The petitioner failed in both respects. There was no adequate proof offered to dispel the admission that at the time of the death of Janis Freimanis he was a German national. And there was no proof whatsoever of-

fered to dispel the inference of laches on the part of the petitioner. The petitioner, of course, has no power under the Latvian treaty with the United States to act for a German national. Accordingly the petition to intervene is in all respects denied.

By way of general comment, inasmuch as it appears that the Regent has been sunk, the court instructs the trustees to hold the trust fund intact, and pending the entry of a final decree, to make no disbursements therefrom of any kind except on application to the court.

Settle order on notice.